**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 4, 2009

Charles R. Fulbruge III
Clerk

No. 08-41106

AMERICA'S RECOMMENDED MAILERS INC

Plaintiff - Appellant

v.

MARYLAND CASUALTY COMPANY

Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:07-CV-348

Before HIGGINBOTHAM, SMITH, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

America's Recommended Mailers, Inc. ("Mailers") is appealing the district court's grant of summary judgment in favor of Maryland Casualty Company ("Maryland"). The district court found that Maryland did not have the duty to defend Mailers in a lawsuit filed against it by the AARP. We AFFIRM.

Maryland issued an insurance policy to Mailers, which contained a duty to defend Mailers against suits regarding "personal and advertising injury." The parties agree that only two parts of the definition of personal and advertising

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

injury potentially apply in this case: (1) "misappropriation of advertising ideas or style of doing business," and (2) "infringing upon another's copyright, trade dress or slogan in your 'advertisement.'"

In 2004, the AARP sued Mailers, alleging it was engaged in a fraudulent scheme to sell financial services to older Americans that falsely claimed endorsement by the AARP. Allegedly, millions of cards were mailed to seniors across the United States that included the AARP's trademarked abbreviation.

In June 2007, Mailers filed a declaratory action in Texas state court, arguing that Maryland had a duty to defend Mailers in the AARP suit. Maryland removed the case to federal district court. Both sides filed motions for summary judgment. In September 2008, the district court granted Maryland's motion. It found that the AARP's claims involved only trademark infringement, which is not included under the policy definition of personal and advertising injury.

We review the question of whether an insurance company has a duty to defend as a question of law. *Liberty Mut. Ins. Co. v. Graham*, 473 F.3d 596, 599 (5th Cir. 2006). Also subject to *de novo* review is a grant of summary judgment. We evaluate the motion papers with the same standard as was required of the district court. *Id.*

Texas law governs this diversity case. The so-called "eight-corners rule" is used to ascertain if there is a duty to defend. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008). The rule requires evaluating only the "terms of the policy and the pleadings of the third-party claimant. Resort to evidence outside the four corners of these two documents is generally prohibited." *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006). Further, the duty to defend is decided without regard to the truth of the allegations in the complaint. Even groundless or fraudulent claims can be the basis for a duty to defend. *See, e.g.*, *Zurich Am. Ins. Co.*, 268

S.W.3d at 491. This rule clearly favors insureds over insurers in some respects, as the concern is not the merits of claims but only the need of an insured to be protected in court against them.

The AARP's complaint against Mailers specifically alleged a number of trademark infringement claims. Mailers concedes that its policy does not require defense of such claims, but asserts there are other claims that must be defended. These additional claims are for misrepresentation and false advertising.

Mailers contends that these other claims are properly characterized as trade dress claims. We have defined trade dress as "the design or packaging of a product which serves to identify the product's source." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354-55 (5th Cir. 2002) (citing *TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28 (2001)). One treatise writer defines "trade dress" as including "the total look of a product and its packaging and even includes the design and shape of the product itself." J. THOMAS MCCARTHY, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 8:4 (4th ed. 2008). We have noted that trade dress can include advertising materials and marketing techniques used to promote a product's sale. We reached that conclusion in the context of disputes over a product's image, including the design, layout, and color schemes of product labels and packaging. *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 338-43 (5th Cir. 1984); *Chevron Chem. Co. v. Voluntary Purchasing Groups, Inc.*, 659 F.2d 695, 697-700 (5th Cir. Unit A Oct. 1981).

While the AARP has alleged that Mailers inappropriately used the AARP's trademark in a deceptive manner, the AARP is not challenging the shape, design, color scheme, or any other aesthetic aspect of the cards or the similarity of Mailers's cards to any other advertisements for financial products. The AARP

is only challenging the fact that Mailers used the AARP name on its cards. This is not a trade dress claim.

The AARP's claims against Mailers are ones of trademark infringement. Each AARP claim is premised on the fact that "AARP," which is trademarked, was used on the mailed cards. Prohibitions on the unauthorized use of trademarks prevent the creation of "a likelihood of confusion in the minds of potential consumers as to the source, affiliation, or sponsorship of the Defendant's" product. *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998). Mailers argues that if it had used the words "American Association of Retired Persons" instead of the abbreviation AARP, the AARP's claims against Mailers would remain the same. We do not decide if that is true. It is enough to note that under the eight-corners rule, we examine what is in the actual complaint. We are not permitted to read facts into the pleadings or imagine factual scenarios that might trigger coverage. *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008).

Because the AARP has only alleged trademark infringement claims in its complaint against Mailers, the only remaining portion of the definition of personal and advertising injury that could create a duty for Maryland to defend is the subpart that includes "misappropriation of advertising ideas or style of doing business." A previous decision of this court applying Texas law to similar issues held that the definition of advertising does not include trademarks; therefore, trademark infringement claims do not involve misappropriation of advertising ideas. *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 464-65 (5th Cir. 2003). Consequently, the AARP's trademark is not advertising under Texas law. It has been conceded that Maryland does not have a duty to defend Mailers in a trademark infringement suit.

The district court's judgment is AFFIRMED.