**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**FILED**

June 29, 2015

Lyle W. Cayce
Clerk

No. 14-20473

———————

TEST MASTERS EDUCATIONAL SERVICES, INCORPORATED,

      Plaintiff - Appellant

v.

STATE FARM LLOYDS,

      Defendant - Appellee

———————

Appeal from the United States District Court
for the Southern District of Texas

———————

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Test Masters Educational Services, Inc. ("TES") filed this lawsuit against State Farm Lloyds, requesting a declaratory judgment that State Farm owes TES a duty to defend. The district court granted summary judgment in favor of State Farm. For the reasons articulated below, we AFFIRM.

## FACTS AND PROCEEDINGS

The underlying lawsuit in this duty-to-defend appeal is the latest in an ongoing series of lawsuits involving TES and Robin Singh Educational Services, Inc. ("Singh").[1] Both TES and Singh provide test preparation services, and both use the trade name or service mark "Testmasters." TES's

---

[1] TES and Singh have been suing each other for over a decade. *See, e.g.*, *Test Masters Educ. Servs., Inc. v. Singh*, 46 F. App'x 227, 2002 WL 1940083 (5th Cir. July 24, 2002) (per curiam); *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559 (5th Cir. 2005).

corporate name is "Test Masters," it uses the mark "Testmasters" on its website, and its website's domain name is "testmasters.com." Singh uses "TestMasters" as its trade name and service mark, and its website domain name is "testmasters.net."

In the underlying lawsuit that triggered this appeal, TES sued Singh, alleging trademark infringement and various other claims. *See Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, No. H-08-1771, 2013 WL 1404816, at *4 (S.D. Tex. Apr. 5, 2013). Singh then filed counterclaims against TES. Singh's original counterclaim alleged that TES's website purported to offer live LSAT preparation courses across the country under the "Testmasters" name and mark, mimicked a map on Singh's website, and made material misrepresentations about TES's services to trick consumers into believing that TES's services were associated with Singh's. TES tendered the original counterclaims to State Farm, and State Farm, with a reservation of rights, agreed to pay for TES's defense.

The State Farm policy in effect at the time provided liability coverage for "advertising injury" claims. "Advertisement[s]" included "notices that are published . . . on the Internet." The policy's definition of "advertising injury," in turn, included "injury arising out of . . . infringing upon another's copyright, *trade dress* or slogan in your advertisement." (emphasis added). Thus, the policy covered trade *dress* claims, but not trade*mark* claims.

When State Farm initially provided a defense, it explained that it was providing coverage because Singh's "counterclaim may allege facts sufficient to indicate trade dress infringement." In its original counterclaims, Singh alleged that TES's website contained a clickable map image of the United States that "mimicked" a map on Singh's website. Singh, however, filed an Amended Counterclaim that removed all allegations related to the map. After it reviewed the Amended Counterclaim, State Farm withdrew its defense,

No. 14-20473

claiming that the Amended Counterclaim did not allege trade dress infringement, and instead only alleged trademark infringement.

TES then filed a lawsuit against State Farm, requesting a declaratory judgment that State Farm has a duty to defend against Singh's Amended Counterclaim. After the parties filed cross-motions for summary judgment, the district court granted State Farm's summary-judgment motion and denied TES's. This appeal timely followed.

## STANDARD OF REVIEW

This court reviews a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).

## DISCUSSION

Texas law governs this diversity case. To determine whether an insurer has a duty to defend, Texas courts apply the eight-corners rule. "Under that rule, courts look to the facts alleged within the four corners of the [third-party plaintiff's] pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Constr. Co. v. Amerisure Ins. Co., Inc.*, 420 S.W.3d 30, 33 (Tex. 2014). When reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions. *Id.* Courts consider the factual allegations "without regard to their truth or falsity" and resolve "all doubts regarding the duty to defend . . . in the insured's favor." *Id.* Even if the underlying complaint only "*potentially* includes a covered claim, the insurer must defend the entire suit." *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008) (emphasis added). "Thus, even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." *Id.* (internal quotation marks, alteration, and citation omitted). "Courts may not,

3

however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008) (internal quotation marks and citation omitted); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 142 (Tex. 1997) (per curiam) ("We will not read facts into the pleadings."). "The insured has the initial burden to establish coverage under the policy." *Ewing Constr. Co.*, 420 S.W.3d at 33.

TES's insurance policy with State Farm covered trade dress—not trademark—claims. Thus, a central question in this appeal is: what is trade dress? "Trade dress" is distinct from a "trademark" or a "service mark." *See Int'l Jensen, Inc. v. Metrosound U.S.A., Inc.*, 4 F.3d 819, 822 (9th Cir. 1993) (contrasting trademarks and trade dress). Although the concepts often overlap, "trade dress protection is generally focused more broadly" than trademark protection. *See* 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:1 (4th ed. 1996) [hereinafter *McCarthy*]. Under the Lanham Act, a "trademark" and a "service mark" include "any word, name, symbol, or device . . . used . . . to identify and distinguish [goods or services, respectively]." 15 U.S.C. § 1127. Relatedly, a "trade name" means "any name used by a person to identify his or her business . . . ." *Id.* Thus, "Testmasters" is a company "trade name" and also a "service mark."

The Act does not define "trade dress," but courts have filled that gap. The term "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010) (internal quotation marks and citation omitted); *see also KLN Steel Prods. Co. v. CNA Ins. Cos.*, 278 S.W.3d 429, 441 (Tex. App. 2008) ("Trade dress . . .

consists of the total image of a product or service, including product features such as design, size, shape, color, packaging labels, [and] color combinations . . . ." (alterations in original) (internal quotation marks and citation omitted)).

An unregistered trade dress may be protectable under section 43(a) of the Lanham Act if the trade dress is distinctive and nonfunctional. *See TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 28–29 (2001); *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 354–55 (5th Cir. 2002). When alleging a trade dress claim, the plaintiff must identify the discrete elements of the trade dress that it wishes to protect. *See* 1 *McCarthy* § 8:3; *see also Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 116 (2d Cir. 2001) ("[W]e hold that a plaintiff seeking to protect its trade dress in a line of products must articulate the design elements that compose the trade dress.").

Courts have extended trade dress protection to the overall "motif" of a restaurant, *see Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 765, 767 (1992), and to the use of a lighthouse as part of the design for a golf hole, *see Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 537, 539–42 (5th Cir. 1998), *abrogated on other grounds by TrafFix Devices, Inc.*, 532 U.S. 23; *see also* 1 *McCarthy* § 8:4.50 (citing additional examples of trade dress, including a magazine cover design, and the layout and appearance of a mail-order catalog). A growing number of courts have confronted whether trade dress protection can extend to websites, so-called "web dress" protection. *See, e.g., Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 310 (3d Cir. 2014); *see also* 1 *McCarthy* § 8:7.25 (discussing the possibility of "web dress" or "site dress" claims).

With this definition of "trade dress" in mind, we turn to the allegations in Singh's Amended Counterclaim. To start, Singh cites section 43(a) of the Lanham Act, which encompasses trade dress infringement claims. *See* 15 U.S.C. § 1125(a)(1); *TrafFix Devices, Inc.*, 532 U.S. at 28–29; *Eppendorf-*

*Netheler-Hinz GMBH*, 289 F.3d at 354. This provision, however, also covers a range of other claims, including trademark infringement and false advertising.[2] *Cf. Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1383 (5th Cir. 1996) (recognizing that section 43(a) "provides protection against a myriad of deceptive commercial practices" (internal quotation marks and citation omitted)). More importantly, this statutory citation alone is not sufficient to trigger coverage. "[C]ourts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged." *Ewing Constr. Co.*, 420 S.W.3d at 33.

Next, TES highlights Singh's allegation that "TES changed its website so that it was confusingly similar to Singh's." TES argues that this allegation, at the very least, introduces some uncertainty as to whether Singh was alleging a trademark or trade dress infringement claim. To be clear, the duty-to-defend standard requires the court to resolve all doubts and ambiguities in TES's favor. *Id.*; *Zurich Am. Ins. Co.*, 268 S.W.3d at 491. And it is possible that an allegation that TES is using a "confusingly similar" website could be the basis of a trade dress infringement claim. TES, however, does not read this allegation in its full context. This paragraph of Singh's Amended Counterclaim alleges that "TES changed its website so that it was confusingly similar to

---

[2] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), provides protection against the use in commerce of:

> any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> >
> > (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services or commercial activities . . . .

Singh's, purporting to offer LSAT preparation courses in every state, although TES had never before offered LSAT courses anywhere, and had never before offered any test preparation courses outside of the state of Texas." Read in its entirety, the Amended Counterclaim focuses on factual misrepresentations on TES's website, not on any alleged trade dress, or "look and feel," in the website itself.[3]

The district court reached the same conclusion. The district court concluded that "[t]he Amended Counterclaims allege that [TES's] website was 'confusingly similar' to Singh's because of the use of the Test Masters Mark and [TES's] list of putative nationwide course locations, but does not allege any facts regarding any inherently distinctive 'look and feel'—or 'trade dress'—of the website." The district court further emphasized that "[a]bsent some allegation of aesthetic similarity to another's advertisement, a claim that defendant infringed a trademark does not itself comprise a claim for trade dress infringement." We agree with the district court.

This analysis is consistent with the conclusion this court reached in *America's Recommended Mailers Inc. v. Maryland Casualty Co.*, 339 F. App'x 467 (5th Cir. 2009) (per curiam). Like here, the insurance policy in that case had an identical definition of "advertising injury," which covered trade dress claims, but not trademark claims. *See id.* at 468. The insured allegedly copied the AARP logo in a direct mail advertising. *Id.* at 469. This court observed that using this logo was a trademark claim, not a trade dress claim. *Id.* As a result, this court affirmed the district court's grant of summary judgment, holding

---

[3] At oral argument, TES contended that Singh's earlier allegations about the clickable map were still in the case even though Singh had removed the map allegations from the Amended Counterclaim. TES provided no legal support for this argument, and we will not read allegations into the Amended Counterclaim that do not exist. *See Gore Design Completions, Ltd.*, 538 F.3d at 369; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 939 S.W.2d at 142.

that there was no duty to defend. *Id.* at 469–70. Although *America's Recommended Mailers* is not binding circuit precedent, this unpublished opinion is persuasive authority supporting the district court's conclusion. *See United States v. Weatherton*, 567 F.3d 149, 153 n.2 (5th Cir. 2009).

*KLN Steel Products Co. v. CNA Insurance Cos.*, a case that TES cites, also supports the conclusion that Singh alleged a trademark—not a trade dress—infringement claim. 278 S.W.3d at 440–42. Again, *KLN Steel* confronted a similar definition of "advertising injury" in the insurance policy—it included trade dress, but not trademark, claims. *Id.* at 440. The underlying complaint alleged misappropriation of the dimensions and other design features of a bed. *See id.* at 442. The court explained that these allegations could not be read as pleading a trade dress claim triggering coverage because none of the features was alleged to be distinctive and nonfunctional. *See id.*

The same conclusion is true here. The term "trade dress" is not mentioned in Singh's Amended Counterclaim, and there are no allegations suggesting that Singh even has a protectable trade dress. For example, there are no allegations describing the content or overall image of Singh's website. Moreover, an allegation that TES is using a "confusingly similar" website is not sufficient to trigger coverage. Consumer confusion is an element of both a trademark infringement claim and a trade dress infringement claim. *See TrafFix Devices, Inc.*, 532 U.S. at 28 (explaining that a trade dress "may not be used in a manner likely to cause confusion"); *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015) (recognizing that likelihood of confusion is an element of a trademark infringement claim). The central focus in this coverage dispute, however, is not on the confusion, but on what allegedly is causing the confusion. The alleged confusion in this case stems from the use of a similar service mark ("Testmasters"), and the false representation that TES offers a similar service (live LSAT courses offered

nationwide). None of the allegations possibly states a claim for confusingly similar trade dress.

In short, the factual allegations in Singh's Amended Counterclaim do not potentially include a trade dress infringement claim. Instead, the Amended Counterclaim alleges trademark infringement and false advertising claims. Neither of those claims is covered under the policy. The district court was therefore correct to grant summary judgment in favor of State Farm.

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.