# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-30515

United States Court of Appeals
Fifth Circuit

**FILED**
March 29, 2019

Lyle W. Cayce
Clerk

UPTOWN GRILL, L.L.C.,

        Plaintiff - Appellee

v.

CAMELLIA GRILL HOLDINGS, INC.,

        Defendant - Appellant

- - - - - - - - - - - - - - - - -

CAMELLIA GRILL HOLDINGS, INC.,

        Plaintiff - Appellant

v.

GRILL HOLDINGS, L.L.C.; CHARTRES GRILL, L.L.C., doing business as Grill; UPTOWN GRILL OF DESTIN, L.L.C.; RANO, L.L.C.; HICHAM KHODR; UPTOWN GRILL, L.L.C.; K & L INVESTMENTS, L.L.C.; ROBERT'S GUMBO SHOP, L.L.C.,

        Defendants - Appellees

- - - - - - - - - - - - - - - - -

CAMELLIA GRILL HOLDINGS, INC.,

        Plaintiff - Appellant

v.

No. 18-30515

CHARTRES GRILL, L.L.C., doing business as Grill; RANO, L.L.C.; HICHAM KHODR; UPTOWN GRILL, L.L.C.; UPTOWN GRILL OF DESTIN, L.L.C.; K & L INVESTMENTS, L.L.C.; ROBERT'S GUMBO SHOP, L.L.C.; GRILL HOLDINGS, L.L.C.,

  Defendants - Appellees

––––––––––––––––––

Appeal from the United States District Court
for the Eastern District of Louisiana

––––––––––––––––––

Before CLEMENT, OWEN, and HO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

An attempt to simultaneously sell a restaurant and license associated intellectual property has led to ten years of litigation in state and federal court. Camellia Grill Holdings, Inc. ("CGH") appeals the district court's most recent attempt to adjudicate the dispute. We affirm in part and reverse in part.

## FACTS AND PROCEEDINGS

Michael Shwartz and his family owned and operated the Camellia Grill restaurant on Carrollton Avenue (the "Carrollton restaurant") for decades. He operated the business—the single restaurant—through a wholly owned corporation, Camellia Grill, Inc. In 1999, Shwartz formed CGH for the sole purpose of owning federally registered Camellia Grill trademarks.[1]

In 2006, Shwartz agreed to sell the Carrollton restaurant to Hicham Khodr.[2] On August 11, in the "Bill of Sale," Shwartz sold to Uptown Grill,

––––––––––––––––––

[1] The marks are registered pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*, which provides for federal trademark protection.

[2] For ease of reference, the Hicham Khodr-affiliated entities (Uptown Grill, L.L.C., RANO, L.L.C., The Grill Holdings, L.L.C., and Chartres Grill, LLC) will be referred to generally as "Khodr," and the Michael Shwartz-affiliated entities (Shwartz, Camellia Grill

2

No. 18-30515

L.L.C. all his "right, title and interest in and to the . . . tangible property located within or upon" the Carrollton restaurant, including "[a]ll furniture, fixtures and equipment, cooking equipment, kitchen equipment, counters, stools, tables, benches, appliances, recipes, trademarks, names, logos, likenesses, etc., and all other personal and/or movable property . . . located within or upon the property."[3]

On August 27, in the "License Agreement," CGH licensed to The Grill Holdings, L.L.C. ("TGH") the right to use certain defined "Marks." These "Marks" included "[a]ll 'Camellia Grill' marks on file with the United States Patent and Trademark Office" and "[a]ll 'trade dress' associated with the 'Camellia Grill' Restaurant," as well as blueprints, menus, and recipes. Section 5 of the License Agreement provides that the "Licensee acknowledges and agrees that all of the Licensor's right, title and interest in and to the Marks shall remain the property of the Licensor." The License Agreement also bound TGH's affiliates and related companies.

In 2009, Khodr opened a Camellia Grill location in Destin, Florida, which eventually failed. In 2010, Khodr opened a location on Chartres Street in New Orleans (the "Chartres restaurant").

Following state court litigation that ended in the termination of the License Agreement,[4] Khodr filed a declaratory action to determine the parties' respective rights in the Camellia Grill trademarks within or upon the Carrollton restaurant. Shwartz filed a separate action asserting trademark

---

Holdings and Camellia Grill, Inc.) will be referred to as "Shwartz," except where it is necessary to distinguish between particular entities.

[3] Shwartz and Khodr had previously signed a contract selling the Carrollton restaurant's immovable property, which is not at issue.

[4] The state court found that Khodr had breached the License Agreement and terminated that contract effective June 1, 2011. *The Grill Holdings, L.L.C. v. Camellia Grill Holdings, Inc.*, 120 So. 3d 294 (La. Ct. App. 2013).

and trade dress infringement claims and breach of contract claims based on the continued use of Camellia Grill-related intellectual property following the termination of the License Agreement. The cases were consolidated.

Khodr moved for, and the district court granted, summary judgment on the question of ownership of trademarks within or upon the Carrollton restaurant. The district court held that the Bill of Sale transferred "ownership of the trademarks associated with the operation of the Camellia Grill restaurant on Carrollton Avenue to Uptown Grill." *Uptown Grill, LLC v. Shwartz*, 116 F. Supp. 3d 713, 723 (E.D. La. 2015). The court also held *sua sponte* that the Bill of Sale transferred *all* Shwartz's rights in the Camellia Grill trademarks to Uptown Grill and entered judgment for Khodr on all claims. *Id.* at 726.

Shwartz appealed, and this court affirmed the district court's first holding but reversed and remanded on its second. *Uptown Grill, L.L.C. v. Shwartz*, 817 F.3d 251, 260 (5th Cir. 2016). The court held that the Bill of Sale "clearly and unambiguously transfers to Uptown Grill the trademarks within or upon the Carrollton Avenue location." *Id.* at 258. However, because Khodr had not asked the district court to make its second holding, this court reversed and remanded for further proceedings. *Id.* at 260.

On remand, the parties filed multiple cross-motions for partial summary judgment. The district court ultimately ruled that the Bill of Sale assigned all Camellia Grill trademark rights to Khodr, as well as trade dress rights associated with the Carrollton restaurant. The court then found that Shwartz was unable to sustain his trade dress infringement claim on the merits. Alternatively, the court held that even if Shwartz could sustain his trademark and trade dress infringement claims, he was not entitled to monetary damages.

With respect to the Shwartz's breach of contract claims, the court found that the parties were still bound by the License Agreement. The court stated

No. 18-30515

in a footnote that because "the parties have consistently treated the License Agreement as valid and binding," it would "give effect to their agreement to the extent permissible under the law." The court held that the use of the trademarks at the Chartres restaurant following the termination of the License Agreement was a breach of that contract. However, the court found that Shwartz could not prove breach of the agreement as to any putative trade dress.

Finally, after a bench trial, the court found that the operation of the Chartres restaurant during two discrete time periods constituted a breach of the License Agreement. The court then found that Shwartz had not proved any compensable damages, so denied any such award. The court enjoined TGH, Uptown Grill, and the company that owned the Chartres restaurant (Chartres Grill, LLC) from employing the Camellia Grill trademarks identified in the License Agreement "at any location other than the Carrol[l]ton Location."

Shwartz timely appealed the district court's various adverse rulings.

## STANDARDS OF REVIEW

We review a district court's grant of summary judgment de novo. *Bridges v. Empire Scaffold, L.L.C.*, 875 F.3d 222, 225 (5th Cir. 2017). "Summary judgment is appropriate if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting FED. R. CIV. P. 56(a)). A court should enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The district court's finding of fact at the bench trial are reviewed for clear error and its legal conclusions de novo. *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595, 601 (5th Cir. 2000).

No. 18-30515

## DISCUSSION

### I.    The Bill of Sale

#### A. Camellia Grill trademarks

The district court denied Shwartz's motion for summary judgment on its ownership of the Camellia Grill trademarks other than at the Carrollton restaurant. The court held that the Bill of Sale assigned all Camellia Grill trademark rights to Khodr because (1) prior to the Bill of Sale, the trademarks had been used only at the Carrollton restaurant, (2) Shwartz made no effort to operate another Camellia Grill-branded restaurant before or since the Bill of Sale, and (3) the Bill of Sale assigned all goodwill and marks associated with the Carrollton restaurant to Khodr.

Shwartz contends that the court erred for several reasons. First, Khodr repeatedly represented that he would not dispute ownership of the trademarks outside the Carrollton restaurant. Second, federal registration of the marks affords Shwartz a presumption of ownership and nationwide protection. Third, the district court's ruling does not take into account the License Agreement.

Khodr's position is hard to pin down. In his briefing, he acknowledges the agreement not to use the trademarks at any location other than the Carrollton restaurant (i.e., the injunction), and argues that whether Shwartz's purported use of the trademarks supports ownership is "of no consequence." However, at oral argument Khodr contended that the Bill of Sale was "all-encompassing" and did in fact assign all Camellia Grill trademark rights to him.

The Bill of Sale conveyed all Shwartz's "right, title and interest" to the "trademarks, names, logos, likenesses, etc. . . . located within or upon" the Carrollton restaurant. This court previously held that the Bill of Sale clearly "transfers to Uptown Grill the trademarks within or upon the Carrollton

6

No. 18-30515

Avenue location." *Shwartz*, 817 F.3d at 258. The question now is whether Shwartz retained any interest in the trademarks. He did not.

When interpreting a contract, "[w]ords of art and technical terms must be given their technical meaning." LA. CIV. CODE ANN. art. 2047.[5] "Trademark" is a technical term that must be given its technical meaning absent any other definition in the Bill of Sale. A trademark is a designation that identifies the source of goods and services and that has no independent significance separate from the goodwill of the business it symbolizes. As a technical matter, a trademark cannot be separated from the goodwill of a business. So, when an entire business is sold, as here, the goodwill and associated trademarks are necessarily transferred absent certain conditions not present here. Thus, the Bill of Sale unambiguously sold all rights to the Camellia Grill trademarks, and we cannot look to parol evidence to find otherwise.

"A trademark is merely a symbol of goodwill and has no independent significance apart from the goodwill that it symbolizes." *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 265 (5th Cir. 1999). A trademark "only gives the right to prohibit the use of it so far as to protect the owner's good will" and so "cannot be sold or assigned apart from the goodwill it symbolizes." *Id.* (quotation omitted). So, trademarks are "incidents and appurtenances to businesses and trades. They have no independent existence . . . ." *Holly Hill Citrus Growers' Ass'n v. Holly Hill Fruit Prods.*, 75 F.2d 13, 15 (5th Cir. 1935); *see United Drug Co. v. Theodore Rectanus Co.*, 248 U.S. 90, 97 (1918) (holding that it is a "fundamental error [to suppose] that a trade-mark right is a right in gross or at large" and that there is "no such thing as property in a trade-mark except as a right appurtenant to an established business or trade in connection with

---

[5] The Bill of Sale has a choice of law provision stating it is "governed by and construed in accordance with the laws of the State of Louisiana."

which the mark is employed"). Put another way, "[t]rademark rights do not exist in the abstract, to be bought and sold as a distinct asset." *Berni v. Int'l Gourmet Rest. of Am., Inc.*, 838 F.2d 642, 646 (2d Cir. 1988); *see also Mister Donut of Am., Inc. v. Mr. Donut, Inc.*, 418 F.2d 838, 842 (9th Cir. 1969) ("The law is well settled that there are no rights in a trademark alone and that no rights can be transferred apart from the business with which the mark has been associated.").

"If an assignee of a trademark also buys the total associated business, including physical assets and such intangibles as trade secrets, formulas and customer lists, then there is no doubt that the assignee has acquired the 'good will' associated with the trademark it has purchased." 3 MCCARTHY ON TRADEMARKS & UNFAIR COMPETITION § 18:23 (5th ed. 2019). When a business is sold as a "going concern, trademarks and the good will of the business . . . are presumed to pass with the sale of the business." *Id.* § 18:37 (calling this an "old and clear rule").

Thus, trademark ownership and the related goodwill "impliedly pass[] with ownership of a business, without express language to the contrary." *Yellowbook Inc. v. Brandeberry*, 708 F.3d 837, 844 (6th Cir. 2013). Moreover, to retain ownership after the sale of the business associated with the trademark, "the owner's intent to resume producing substantially the same product or service must be manifest, *some portion of the goodwill of the previous business must remain with the owner*, and resumption of operations must occur within a reasonable time." *Berni*, 838 F.2d at 647 (emphasis added). When selling an entire business, the rights to associated trademarks are necessarily sold unless at least two conditions are met: (1) the contract expressly reserves some right and interest in the trademark, and (2) the seller retains some of the business's goodwill. The latter condition is the most important, as no rights to trademarks can exist without the related goodwill.

No. 18-30515

With that background, we turn to the Bill of Sale. Having already sold to Khodr the Carrollton restaurant's real property, Shwartz sold "all of [his] right, title and interest in and to" all "furniture, fixtures and equipment, cooking equipment, kitchen equipment, counters, stools, tables, benches, appliances, recipes, trademarks, names, logos, likenesses, etc., and all other personal and/or movable property owned by [Shwartz] located within or upon the [real] property."

The only Camellia Grill business was the Carrollton restaurant. So, all goodwill associated with Camellia Grill was connected to the business sold to Khodr as a going concern. No goodwill was expressly retained or remained to which otherwise free-floating trademark rights could attach, and Shwartz has never argued that he retained some part of the business's goodwill. Without looking outside the four corners of the Bill of Sale, and given the technical understanding of the term "trademark," the contract unambiguously transfers "all of [Shwartz's] right, title, and interest" in the Camellia Grill trademarks.

It is of course possible to assign geographically bounded rights to trademarks. *See* 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:21 (5th ed. 2018) ("[T]he sale of a geographically separate portion of a marketing business may be valid as a transfer of a separate and distinct goodwill."). However, the validity of such an assignment relies on the premise that there exists another portion of the business with separate and distinct goodwill retained by the seller. *See id.* (citing *Ky. Fried Chicken Corp. v. Diversified Packaging Corp.*, 549 F.2d 268 (5th Cir. 1977); *Greenlon, Inc. of Cincinnati v. Greenlawn, Inc.*, 542 F. Supp. 890 (S.D. Ohio 1982); *Cal. Wine & Liquor Corp. v. William Zakon & Sons*, 8 N.E.2d 812 (Mass. 1937)). We have not been able to locate a case, and Shwartz points to none, where a trademark owner sells his sole business, assigns a related trademark only as to that single business location, and retains a right to use the trademark when no other

9

business or portion of the business with goodwill symbolized by that trademark exists. The point is not that a geographically bounded right to a trademark can never be assigned. The point is that in the context of this transaction it could not.[6]

We cannot look to the later-executed License Agreement to create ambiguity regarding the technical terms used in the Bill of Sale. Given the dictates of trademark law and the technical understanding of trademarks, the Bill of Sale's assignment of the Camellia Grill trademark rights–all of them—is unambiguous.

Finding Khodr to be the owner of all trademark rights associated with Camellia Grill also comports with the policy of avoiding the fragmentation of trademark ownership. *See* 2 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 16:40 (5th ed. 2018) ("When there is a dispute over who owns a trademark, the worst possible solution is to allow mark ownership to be shared among the warring parties."). Finding that Shwartz retained some rights in the Camellia Grill trademarks would be contrary to a fundamental purpose of trademarks: identifying a single source of a product or service. This policy seems particularly applicable given the parties' acrimonious and litigious history.

Shwartz argues that finding the Bill of Sale to have assigned all trademark rights to Khodr is in direct tension with the License Agreement. If Shwartz sold all trademark rights to Khodr in the Bill of Sale, then Shwartz could not turn around and license these rights in the License Agreement. There would be no reason for Khodr to pay $1 million to license rights he already

---

[6] That the License Agreement carves out Oxford, Mississippi for Shwartz's future use of the trademark does not affect this analysis. An assignment transfers ownership of the trademark. A license gives one party a limited right to use another's trademark in exchange for a payment.

owned, or to agree to a contract provision acknowledging that Shwartz retained ownership.

The district court continued to enforce the License Agreement "to the extent permissible under the law" given that all parties have always treated it as valid. The parties appear to have made a mutual mistake as to a material, basic assumption upon which the License Agreement was made: that Shwartz had rights to license. Under Louisiana law,[7] this would render the License Agreement "relatively null." LA. CIV. CODE ANN. art. 2031. Such a contract may be enforced. *Id.* And relative nullity "may be invoked only by those persons for whose interest the ground for nullity [such as mutual mistake] was established, and may not be declared by the court on its own initiative." *Id.* Because Khodr is not attempting to nullify the License Agreement, we will enforce it as far as possible.

However, as this court previously held, the License Agreement does not supersede or modify the Bill of Sale. *Shwartz*, 817 F.3d at 258 n.2. Therefore, Shwartz cannot sustain his claims of trademark ownership on the basis of the License Agreement.

We affirm the district court's ruling that the Bill of Sale assigned all Camellia Grill trademark rights to Khodr.

### B. Camellia Grill trade dress

The district court denied Shwartz's motion for summary judgment on his ownership of Camellia Grill trade dress. As to the Carrollton restaurant, the court held that the Bill of Sale necessarily included any putative trade dress. To hold otherwise would lead to an absurd result that prevented Khodr from making use of the property he purchased. Shwartz contends that the Bill of

---

[7] The License Agreement has a choice of law provision stating it is "governed by and construed and enforced in accordance with the internal laws of the State of Louisiana."

Sale does not include the term "trade dress" so it could not have assigned trade dress rights.

Trade dress "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Test Masters Educ. Svcs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 565 (5th Cir. 2015) (quotation omitted). It is "distinct from a 'trademark' or a 'service mark,'" and has been extended to the "overall 'motif' of a restaurant.'" *Id.* at 564–65. The Bill of Sale unambiguously transferred "all [furniture and equipment Shwartz contends constitutes trade dress,] . . . trademarks, names, logos, [and] likenesses, etc." at the Carrollton restaurant. Shwartz necessarily transferred the right to use any trade dress that existed there.

We affirm the district court's ruling that the Bill of Sale assigned the trade dress associated with the Carrollton restaurant. Moreover, no abstract rights to trade dress could remain following the sale of the entire business. It follows that the Bill of Sale assigned all Camellia Grill trade dress rights to Khodr, much as all the trademark rights were assigned.

### C. Infringement Claims

Because we find that the Bill of Sale assigned all rights to Camellia Grill-associated trademark and trade dress to Khodr, Shwartz's Lanham Act infringement claims must fail. Accordingly, we affirm the district court's finding that infringement damages are unwarranted. We turn now to Shwartz's breach of contract claims under the License Agreement.

## II.   The License Agreement

### A. Trade Dress

Even though we find all putative trade dress rights were assigned to Khodr in the Bill of Sale, we must still determine whether the License

No. 18-30515

Agreement afforded Shwartz any enforceable contract rights. Section 1.1 of the License Agreement states that Shwartz "owns the intellectual property, trademarks and service marks ("Marks") described" in Exhibit 1.1. Exhibit 1.1, among other intellectual property, lists "All 'trade dress' associated with the 'Camellia Grill' Restaurant." The post-termination provisions of the License Agreement require Khodr to "avoid any action or the continuance of any condition which might suggest to the public that [Khodr] has any rights to the Marks, or that [Khodr] continues to be associated with [Shwartz]."

The district court held that Shwartz could not bring a breach of contract claim based on trade dress because the elements of the putative trade dress were not defined in the License Agreement. Shwartz argues that articulation of trade dress elements is required for an infringement claim under the Lanham Act, but not for a breach of contract claim. Khodr responds that the contract term "trade dress" is too ambiguous to be enforceable and that the alleged trade dress is not protectable.

"Trade dress" is a technical term that can be given its technical meaning. *See* LA. CIV. CODE ANN. art. 2047. Therefore, the elements of a claimed trade dress need not necessarily be articulated in a contract for a party to enforce his rights under the contract. Instead, we interpret "trade dress" to mean "the total image and overall appearance of a product [that] may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Test Masters Educ. Servs., Inc.*, 791 F.3d at 565 (quotation omitted).

The district court found that the alleged elements of the trade dress include:

> (1) the "straw popping" routine, (2) U-shaped counters, (3) audible order calling routine, (4) pink and green wall scheme, (5) separate pie cases on the rear wall at both ends of the cooking line, (6) stainless steel stemmed stools with

13

> green cushions, (7) individual counter checks handed to each customer, [and] (8) fluted metal design under the counters and above the cooking line.

However, because of the court's ruling on the enforceability of the contract, it did not reach the question of whether Shwartz proved a breach. Neither party briefed this question on appeal. Therefore, we reverse the district court's denial of summary judgment on the trade-dress breach of contract claim and remand for proceedings to determine if Khodr breached the License Agreement by using the above-detailed alleged trade dress at the Chartres restaurant.

### B. Damages based on use of trademarks

After a bench trial on the breach of the License Agreement through the use of the Camellia Grill trademarks at the Chartres restaurant, the district court awarded Shwartz no compensable damages but enjoined Chartres Grill, TGH, and Uptown Grill from using the trademarks at any location other than the Carrollton restaurant. Shwartz contends that state and federal trademark infringement remedies should inform the proper measure of damages: disgorgement of profits. Shwartz also argues that the district court should have enjoined Hicham Khodr himself, not simply his wholly owned entities. Khodr responds that the proper damages for a breach of contract under Louisiana law are loss and profits deprived. He contends that infringement remedies are inapposite and Shwartz did not prove any actual damages from the breach. Khodr does not respond to Shwartz's argument regarding the scope of the injunction.

Under Louisiana law, damages for a breach of contract "are measured by the loss sustained by the obligee and the profit of which he has been deprived." LA. CIV. CODE ANN. art. 1995. Shwartz provided no reason for the district court or this court to stray from this measure. Nor has he argued that he in fact

proved loss or profits he was deprived of due to the breach. Therefore, we affirm the district court's ruling on compensable damages.

"A grant of injunctive relief is reviewed for an abuse of discretion." *Am. Rice, Inc. v. Prods. Rice Mill, Inc.*, 518 F.3d 321, 334 (5th Cir. 2008). Shwartz contends that an injunction that does not include Hicham Khodr personally "will in all likelihood have little to no effect." However, besides an unsubstantiated allegation that Hicham opened a new restaurant using elements of the putative Camellia Grill trade dress, Shwartz offers no argument or evidence showing the district court relied on "clearly erroneous factual findings" or "erroneous conclusions of law . . . when fashioning its injunctive relief." *Houston Chronicle Publ'g Co. v. City of League, Tex.*, 488 F.3d 613, 621 (5th Cir. 2007) (quotation omitted). Accordingly, we find that Shwartz has not shown that the district court abused its discretion when determining the scope of the injunction.

## CONCLUSION

For the foregoing reasons, we AFFIRM in part and REVERSE in part. The case is remanded for further proceedings compatible with this opinion.