# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 18-11655

United States Court of Appeals
Fifth Circuit

**FILED**
November 7, 2019

Lyle W. Cayce
Clerk

AMANDA R. ABBOOD,

     Plaintiff - Appellant

v.

TEXAS HEALTH AND HUMAN SERVICES COMMISSION,

     Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:17-CV-909

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

     Amanda Abbood sued her former employer under Title VII, alleging that sexual harassment by her male coworker created a hostile work environment and that she was fired in retaliation for reporting it. Abbood appeals the district court's summary judgment dismissal of her claims. We AFFIRM.

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-11655

## I.

Abbood worked for the Texas Health and Human Services Commission ("HHSC") from October 2014 until she was fired in January 2017. Her primary job duty was to determine client eligibility for Medicaid programs. To do so, she was given access to the Data Broker, a system used by HHSC to verify background and financial information about Medicaid recipients and applicants. Because of the sensitive and confidential nature of the information found in the Data Broker system, Abbood signed a Computer Use Agreement[1] and a Data Broker Computer Security Agreement,[2] confirming that unauthorized use of Data Broker information would result in disciplinary action "up to and including dismissal."

On December 15, 2016, Abbood told a coworker that she found a dog tied up outside, and that she input the phone number from the dog's tag into the Data Broker system to find its owner. Because HHSC forbids personal use of the Data Broker system, Abbood's coworker reported the incident to their supervisor, Stacy Allen. Allen confronted Abbood and informed her that such unauthorized use of the Data Broker system violated several HHSC work rules and was considered a major offense that could result in dismissal.

Abbood was given notice and an opportunity to respond. In her rebuttal letter, Abbood explained that the search did not actually produce any confidential information, and that she did not believe her actions warranted

---

[1] The Computer Use Agreement states: "I will only access confidential information that I have a need to know;" "I will not in any way … review … confidential information except as properly authorized within the scope of my activities;" and "I understand that my failure to comply with this Agreement may result in … disciplinary action, up to and including dismissal[.]"

[2] The Data Broker Computer Security Agreement states: "I understand the information obtained from the system shall be used only for official state-approved business;" and "I understand that inappropriate use of Data Broker information is a work rule violation and will result in disciplinary action up to and including dismissal[.]"

dismissal. On January 11, 2017, Abbood was officially terminated for "unauthorized use of Data Broker information."

Abbood says she was fired for a different reason: reporting sexual harassment.[3] On August 3, 2016, Abbood and fellow HHSC employee Jacquelyn Nino told Allen that their coworker, Matt Otts, had subjected them to sexually offensive and unwelcome conduct. Abbood complained that Otts often commented on her figure; discussed his marital problems and "movies on Netflix that have a highly sexual connotation;" made "several comments … to the effect of, 'oh if I was just a little bit younger;'" and mentioned "younger women and older men in relationships" several times, adding that "if [she were] ever into that [she would] just need to let him know." Abbood told her supervisors that she was "seriously considering filing a complaint with the EEOC."

Allen asked both women to prepare a written statement and confronted Otts about their complaints. Otts admitted to making the complained-of comments, but stated that he was "joking" and did not mean to harass or offend his coworkers. Allen reported the complaints up the chain of command and, after consulting with the legal department, the regional director decided not to fire Otts. Instead, Otts was reprimanded, counseled, reassigned to another unit, and his office was relocated to the side of the building opposite Abbood and Nino. For the next two months, Otts was out of the office on medical leave.

Abbood and Nino reported Otts's behavior a second time on December 15, 2016 (the same day Abbood used the Data Broker system to search for the dog's owner). In this complaint, Abbood reported that, on December 14, Otts said he wanted to "jump her bones." Allen gathered written statements from

---

[3] Abbood also suggests she was fired in retaliation for reporting Medicaid fraud. That activity is not protected under Title VII and does not support a retaliation claim. *See E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016).

No. 18-11655

Abbood, Nino, and three witnesses. Otts was immediately removed from the building, placed on emergency leave, and the office locks were changed. In January 2017 (around the same time Abbood was fired), after an investigation was completed, Otts was fired.

Abbood sued HHSC for hostile work environment and retaliation under Title VII. The district court granted HHSC's motion for summary judgment, holding that (1) Otts's conduct was neither "severe" nor "pervasive" enough to create an actionable hostile work environment, and (2) Abbood could not establish a causal connection between her Title VII-protected activity and her termination. Abbood appealed.

## II.

We review a district court's grant of summary judgment de novo,[4] viewing all facts and drawing all inferences in favor of the non-moving party. Summary judgment is proper when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Where, as here, "the burden at trial rests on the non-movant, the movant must merely demonstrate an absence of evidentiary support in the record for the non-movant's case."[6] "On appeal we may affirm a grant of summary judgment 'on any legal ground raised below, even if it was not the basis for the district court's decision.'"[7]

---

[4] *Uptown Grill, L.L.C. v. Camellia Grill Holdings, Inc.*, 920 F.3d 243, 247 (5th Cir. 2019).

[5] FED. R. CIV. P. 56(a).

[6] *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

[7] *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010) (quoting *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003)).

No. 18-11655

## III.

## A.

To establish a hostile work environment claim, Abbood must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) HHSC knew or should have known of the harassment and failed to take prompt remedial action.[8]

Abbood argues the district court erred in finding that the summary judgment evidence did not show that Otts's conduct was sufficiently severe or pervasive to constitute a hostile work environment under the fourth prong. We agree that the district court erred in this respect, and that a fact issue was presented. But because Abbood has not shown a genuine dispute as to whether HHSC took prompt remedial action once it knew of the harassment—the fifth prong—her hostile work environment claim fails as a matter of law.[9]

Harassment affects a "term, condition, or privilege of employment" only if it is either "severe or pervasive."[10] This high standard is meant to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing."[11] The environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."[12] '[S]imple teasing," "offhand

---

[8] *Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001). A plaintiff need not satisfy the fifth prong when the alleged harasser is a supervisor. *Watts v. Kroger Co.*, 170 F.3d 505, 509 (5th Cir. 1999).

[9] *See Bayle*, 615 F.3d at 355.

[10] *Lauderdale v. Texas Dep't of Criminal Justice, Inst. Div.*, 512 F.3d 157, 163 (5th Cir. 2007) (internal quotation marks omitted).

[11] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

[12] *Id.* at 787.

comments," and "isolated incidents (unless extremely serious)" are not actionable—Title VII is not a "general civility code."[13]

We consider the totality of the circumstances in determining whether an environment is hostile. Relevant factors include: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with the employee's work performance.[14]

Viewing the record in the light most favorable to Abbood, a jury may find that the harassment she experienced altered the terms or conditions of her employment. It was pervasive—Otts made inappropriate and offensive comments regularly for "well over a year." Some of it was severe—once, Otts told Abbood that she was "getting him going," and implied that he had an erection and could not stand. On another occasion, Otts entered Abbood's cubicle while she was bending over, and said "Damn, that's a nice surprise." Abbood was "constantly on edge and afraid at work"—"[e]very day [she] wondered whether Mr. Otts would show up and harass [her], and many days he did."

Nevertheless, HHSC is not liable under Title VII if it took "prompt remedial action" once it knew of Otts's harassment.[15] Abbood argues that Otts should have been fired when she first reported him in August 2016, and that HHSC's response was ineffective because he harassed her again in December. But an employer "need not impose the most severe punishment" on an offending employee, so long as the remedial action is "reasonably calculated"

---

[13] *Id.* at 787-88.

[14] *Id.*

[15] *Williams-Boldware v. Denton Cty.*, 741 F.3d 635, 640 (5th Cir. 2014).

to end the harassment.[16] And "[t]o be reasonably calculated to end the harassment, an employer's actions need not end the harassment instantly."[17] "The test … is not whether the harassment stopped but whether the action taken by the employer was reasonably calculated to end the harassment."[18]

Here, the record reflects that HHSC took prompt remedial action.[19] When Abbood first reported Otts's conduct to her supervisor, she immediately asked Abbood to prepare a written statement, confronted Otts about the allegations, and reported his conduct up the chain of command. Otts was reassigned to a different unit, moved to a different side of the building, and instructed to limit future communication. And when, months later, Abbood complained a second time, Otts was immediately placed on emergency leave, the office locks were changed, and he was subsequently fired. These facts demonstrate that HHSC took prompt remedial action.

## B.

Under our Title VII retaliation framework, to establish a retaliation claim, the initial burden rests with the employee to establish a prima facie case by showing that: (1) she participated in an activity protected by Title VII; (2) she was subject to an adverse employment action; and (3) there is a causal

---

[16] *Kreamer v. Henry's Towing*, 150 F. App'x 378, 382 (5th Cir. 2005); *see also Williams-Boldware*, 741 F.3d at 640 ("Employers are not required to impose draconian penalties upon the offending employee in order to satisfy this court's prompt remedial action standard.").

[17] *Kreamer*, 150 F. App'x at 382. Although an unpublished opinion issued on or after January 1, 1996 is generally not controlling precedent, it may be considered as persuasive authority. *See Ballard v. Burton*, 444 F.3d 391, 401 (5th Cir. 2006).

[18] *Barkley v. Singing River Elec. Power Ass'n*, 433 F. App'x 254, 259 (5th Cir. 2011).

[19] *See, e.g., Matherne v. Ruba Mgmt.*, 624 F. App'x 835, 841 (5th Cir. 2015) (per curium) (employer took prompt remedial action as a matter of law by investigating employees' harassment complaints, transferring alleged harassers to a different shift, and conducting a sexual harassment education program); *Tucker v. United Parcel Serv., Inc.*, 734 F. App'x 937, 942 (5th Cir. 2018) (per curium) (prompt remedial action where employer conducted an investigation, moved the plaintiff to a separate work area, instructed the alleged harasser not to enter that work area, counseled him on its sexual harassment policies, and the harassment ceased).

connection between the adverse employment action and the protected activity.[20] Once the employee establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action.[21] If it does so, "the burden shifts back to the employee to demonstrate that the employer's reason is actually a pretext for retaliation."[22]

The prima facie case's causal connection requirement can be satisfied "simply by showing close enough timing between [the] protected activity and [the] adverse employment action."[23] Under this standard, Abbood established her prima facie case: the firing process began the same day she reported Otts's sexual harassment a second time.  Then, HHSC provided a legitimate reason for her termination: unauthorized use of the Data Broker system. At this stage of the burden-shifting framework, "[t]he employer's burden is only one of production, not persuasion, and involves no credibility assessment."[24] "[O]nce the employer offers a legitimate, nondiscriminatory reason … the plaintiff must offer some evidence from which the jury may infer that retaliation was the real motive."[25]

To survive summary judgment, Abbood "must show 'a conflict in substantial evidence'" on the question of whether HHSC would not have fired her but for the protected activity.[26] As evidence of pretext, Abbood argues that Allen was "not happy" that Abbood was contemplating filing an EEOC charge

---

[20] *Feist v. La. Dep't. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).

[21] *Id.*

[22] *Id.* (quoting *LeMaire v. Louisiana*, 480 F.3d 383, 388-89 (5th Cir. 2007)).

[23] *Garcia v. Professional Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).

[24] *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007).

[25] *Id.* at 562.

[26] *Feist*, 730 F.3d at 454 (quoting *Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir. 1996)).

and indicated that she might be subjected to an adverse employment action if she did; her search of the Data Broker system did not actually reveal any confidential information; and her conduct in identifying a dog owner was not serious enough to warrant dismissal.

The record shows, however, that (1) HHSC policy forbids the unauthorized use of the Data Broker system; (2) Abbood admitted to breaching that policy by using the Data Broker system for a purpose unrelated to her employment; (3) the Data Broker Computer Security Agreement specifically warns that "inappropriate use of Data Broker information … will result in disciplinary action up to and including dismissal;" (4) other employees were terminated for similar unauthorized use; and (5) no adverse employment action was taken against Nino, who reported sexual harassment alongside Abbood on both occasions.[27]

That Abbood believes her actions merited a lesser sanction—or that HHSC's policy against unauthorized use of the Data Broker system should not reach her conduct given her innocent motive for the search and the fact that it yielded no results—does not create a fact issue.[28] "Our anti-discrimination laws do not require an employer to make proper decisions, only non-retaliatory ones."[29] Abbood has not produced evidence from which a reasonable factfinder

---

[27] Abbood argues that Nino is not a comparator, because Abbood filed an EEOC complaint and Nino did not. Abbood did not file her EEOC complaint, however, until May of 2017 – five months *after* she was fired.

[28] *See United States ex rel King v. Solvay Pharm., Inc.*, 871 F.3d 318, 334 (5th Cir. 2017) (holding that employees failed to show pretext where they "admit[ted] that they violated [the employer's] marketing policies and that employees may be terminated for marketing policy violations.").

[29] *LeMaire*, 480 F.3d at 391. *See also Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991) (holding that "even an incorrect belief that an employee's performance is inadequate" is a legitimate reason.).

No. 18-11655

could conclude that she would not have been fired but for her decision to engage in activity protected by Title VII.[30]

For these reasons, the judgment of the district court is AFFIRMED.

---

[30] This court has considered a supervisor's threat of retaliation to be some evidence of pretext. But those cases are distinguishable, because they involved otherwise strong evidence of pretext. *See, e.g., Wallace v. Seton Family of Hosps.*, 777 F. App'x 83, 93 (5th Cir. 2019) (supervisor's threat to "get [plaintiff] in trouble;" employer's shifting explanations for firing her; suspicious temporal proximity between plaintiff's protected activity and termination; and evidence that she was disciplined differently from other employees sufficient evidence of pretext); *Robinson v. Jackson State Univ.*, 714 F. App'x 354, 363 (5th Cir. 2017) (employer's threat of retaliatory termination, changing explanations, departure from protocol, temporal proximity, and termination of only other employee to corroborate plaintiff's allegations sufficient evidence of pretext).