# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-11183

United States Court of Appeals
Fif h Circuit

**FILED**

July 28, 2017

Lyle W. Cayce
Clerk

LANEY CHIROPRACTIC AND SPORTS THERAPY, P.A.,

Plaintiff - Appellant

v.

NATIONWIDE MUTUAL INSURANCE COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before JONES, CLEMENT, and HIGGINSON, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:

Defendant-Appellee Nationwide Mutual Insurance Company ("Nationwide") issued a series of insurance policies (collectively, the "Policy") to Plaintiff-Appellant Laney Chiropractic Sports Therapy, P.A. ("Laney"). In March 2015, ART Corporate Solutions, Inc. and Active Release Techniques, LLC (collectively, the "ART Companies") sued Laney (the "Underlying Complaint"). Laney sought coverage under the Policy, and Nationwide refused to defend. In response, Laney sued, seeking a declaration that Nationwide was required to defend it. On cross-motions for summary judgment, the district court agreed with Nationwide. Laney appealed. We affirm.

No. 16-11183

I

The following allegations come from the Underlying Complaint. In 1985, Dr. Michael Leahy developed "Active Release Techniques," or "ART." ART is a soft-tissue, movement-based massage technique, which includes over 500 treatment protocols. The ART Companies hold trademarks for the terms "ART" and "Active Release Techniques." Dr. Leahy also received several patents for the ART system. Dr. Leahy monetized ART by training and licensing others to use the technique.

Laney began providing ART treatments in 2004 pursuant to a licensing agreement with the ART Companies. However, around 2011, Laney began competing with the ART Companies by providing ART services directly to customers outside of any licensing agreement. For a time, Laney's website explicitly referred to ART. But "sometime after" September 2014, Laney changed its website to refer to non-trademarked phrases such as "soft tissue techniques," "STT," or "500 unique deep tissue protocols." Later, Laney changed its website again to refer to "Fascial Distortion Model" or "FDM." Nonetheless, although the verbiage changed, "[t]he actual description of the services provided . . . remained exactly the same." The Underlying Complaint alleges the following causes of action against Laney: federal trademark infringement, false and/or misleading advertising, deceptive business practices, unfair competition, breach of contract, and breach of the duty of good faith and fair dealing.

Contending that the Underlying Complaint alleged facts and claims potentially within the coverage, Laney tendered the complaint to Nationwide. Nationwide refused to defend.

The Policy provides the following coverage:

> a. We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally

2

No. 16-11183

obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy. . . .

"Personal and advertising injury" is relevantly defined as follows:

**"Personal and advertising injury"** means injury, including consequential "bodily injury[,"] arising out of one or more of the following offenses: . . .

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement[."]

After Nationwide denied coverage, Laney sued, seeking a declaratory judgment that Nationwide had a duty to defend. Laney and Nationwide cross-moved for summary judgment. The district court denied Laney's motion and granted Nationwide's, finding that the Underlying Complaint did not assert a covered claim.

## II

"We review de novo a district court's award of summary judgment, applying the same standard as the district court." *Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687, 690 (5th Cir. 2010). Under Texas law, which governs here, "insurance policies are construed as are contracts generally, and must be interpreted to effectuate the intent of the parties at the time the contracts were formed." *Mid-Continent Cas. Co. v. JHP Dev., Inc.*, 557 F.3d 207, 212 (5th Cir. 2009) (citing *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998); *Glover v. Nat'l Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex. 1977)). "When the words of a policy are unambiguous, they are to be given their plain, ordinary, and generally accepted meaning, unless the policy clearly indicates that the contractual

No. 16-11183

terms have been used in a different or technical sense." *Id.* "However, when the language of a policy is susceptible to more than one construction, it should be construed strictly against the insurer and liberally in favor of the insured." *Id.* (citing *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)).

"In Texas, the insurer's duty to defend is governed by the 'eight corners rule,' which holds that the duty to defend is determined solely from the terms of the policy and the pleadings of the third-party claimant." *Ooida Risk Retention Grp., Inc. v. Williams*, 579 F.3d 469, 472 (5th Cir. 2009). "The duty to defend does not depend upon the truth or falsity of the allegations; a plaintiff's factual allegations that potentially support a covered claim are all that is needed to invoke the insurer's duty to defend." *JHP Dev.*, 557 F.3d at 212. "When reviewing the pleadings, courts must focus on the factual allegations, not the asserted legal theories or conclusions." *Test Masters Educ. Servs., Inc. v. State Farm Lloyds*, 791 F.3d 561, 564 (5th Cir. 2015) (citing *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014)). "If the underlying pleading alleges facts that may fall within the scope of coverage, the insurer has a duty to defend; if, on the other hand, the pleading only alleges facts excluded by the policy, there is no duty to defend." *Ooida*, 579 F.3d at 472. "Thus, even if the allegations are groundless, false, or fraudulent the insurer is obligated to defend." *Test Masters*, 791 F.3d at 564 (quoting *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008)). "Courts may not, however, (1) read facts into the pleadings, (2) look outside the pleadings, or (3) imagine factual scenarios which might trigger coverage." *Id.* (quoting *Gore Design Completions, Ltd. v. Hartford Fire Ins. Co.*, 538 F.3d 365, 369 (5th Cir. 2008)).

III

Laney argues that the Underlying Complaint alleges facts that describe an advertising injury in three ways: (1) by alleging the use of the ART

No. 16-11183

Companies' advertising ideas, (2) by alleging trade dress infringement, and (3) by alleging slogan infringement.  We reject each argument.

A

Laney first argues that the district court erred when it concluded that the Underlying Complaint did not allege the use of another's "advertising idea."  Laney contends that the Underlying Complaint alleges that the ART Companies' advertising ideas were used by Laney in promoting its treatment by using phrases "soft tissue techniques," "soft tissue therapy," and "more than 500 techniques" on its website and including ART testimonial videos focusing on the benefits and effectiveness of ART treatments.

Although the Policy defines "advertisement" it does not define "advertising idea."  Absent a policy definition, terms are "given their plain, ordinary, and generally accepted meaning" unless the insurance contract indicates otherwise.  *Ramsay v. Md. Am. Gen. Ins. Co.*, 533 S.W.2d 344, 346 (Tex. 1976); *see also U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 589 F. App'x 659, 662 (5th Cir. 2014) (unpublished) (applying *Ramsay*).  "The Fifth Circuit and Texas'[s] courts have not spoken directly to the definition of an advertising idea in [commercial general liability] policies. . . ."  *Cont'l Cas. Co. v. Consol. Graphics, Inc.*, 656 F. Supp. 2d 650, 658–59 (S.D. Tex. 2009), *aff'd*, 646 F.3d 210 (5th Cir. 2011).  Other courts, however, have persuasively defined "advertising idea."  For example, the Eleventh Circuit defines "advertising idea" as "any idea or concept related to the promotion of a product to the public."  *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1188 (11th Cir. 2002).  Other circuits have adopted similar definitions, *see, e.g.*, *Green Mach. Corp. v. Zurich-Am. Ins. Grp.*, 313 F.3d 837, 839 (3d Cir. 2002) (an advertising idea is "an idea about the solicitation of business and customers."), as have district courts in this circuit, *see, e.g.*, *Gemini Ins. Co. v. Andy Boyd Co., LLC.*, No. CIV.A. H-05-1861, 2006 WL 1195639, at *2 (S.D. Tex. May 3,

No. 16-11183

2006) ("An advertising idea is a concept about the *manner* a product is promoted to the public."), *aff'd*, 243 F. App'x 814 (5th Cir. 2007) (unpublished).[1] Under these definitions, the Underlying Complaint does not allege the use of the ART Companies' advertising ideas in Laney's advertising.

Preliminarily, allegations that Laney used the ART Companies' trademarks do not allege the use of the ART Companies' advertising ideas because under Texas law, a trademark is not a marketing or advertising device. *Sport Supply*, 335 F.3d at 464. Accordingly, Laney's use of trademarked phrases, such as "ART" or "Active Release Techniques," is not the use of another's advertising idea. *Id.* at 464–65.

Likewise, allegations that Laney used non-trademarked phrases, such as "STT," "soft tissue techniques," and "more than 500 techniques," do not allege the use of the ART Companies' advertising ideas.

The Underlying Complaint alleges that Laney—but not the ART Companies—used phrases like "STT," "soft tissue techniques," and "more than 500 techniques." True, occasionally the Underlying Complaint refers to ART as a "soft tissue system," or an "extremely effective soft tissue management system" but those statements neither attribute the use of the "soft tissue" language to the ART Companies nor indicate that the ART Companies used the "soft tissue" language in its advertising. The same is true for the use of the phrase "more than 500 techniques." Although the Underlying Complaint describes ART as featuring over 500 techniques, it alleges only that Laney used the phrase. The Underlying Complaint cannot allege that Laney used the ART

---

[1] These definitions accord with both Texas law and the Policy's definitions of advertising. Under Texas law, "the term 'advertising' refers to a common device for soliciting business." *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 464 (5th Cir. 2003). Likewise, the Policy's definition of advertisement, requires "a notice that is broadcast or published" to the public "for the purposes of attracting customers or supporters."

No. 16-11183

Companies' advertising ideas if it does not allege that the ART Companies had advertising ideas.

Even if the Underlying Complaint alleged that the ART Companies used the challenged phrases, we would still hold that the Underlying Complaint did not allege the use of another's advertising idea. Generally, an "advertisement is an activity or item distinct from the product being advertised."[2] *Sport Supply*, 335 F.3d at 463 (quoting *Ekco Grp., Inc. v. Travelers Indem. Co. of Ill.*, 273 F.3d 409, 413 (1st Cir. 2001)); *accord Green Mach.*, 313 F.3d at 839. Accordingly, when an insured is accused of using another's product, they are generally not using another's "advertising idea." *See, e.g.*, *Frog, Switch & Mfg. Co. v. Travelers Ins. Co.*, 193 F.3d 742, 748 (3d Cir. 1999); *Simply Fresh Fruit, Inc. v. Cont'l Ins. Co.*, 94 F.3d 1219, 1222 (9th Cir. 1996), *as amended* (Aug. 16, 1996); *Evanston Ins. Co. v. Clartre, Inc.*, 158 F. Supp. 3d 1110, 1120 (W.D. Wash. 2016); *Kreuger Int'l, Inc. v. Fed. Ins. Co.*, 637 F. Supp. 2d 604, 614 (E.D. Wis. 2008); *Pa. Pulp & Paper Co. v. Nationwide Mut. Ins. Co.*, 100 S.W.3d 566, 572 (Tex. App.—Houston [14th Dist.] 2003, pet. denied).[3] And that is precisely what the Underlying Complaint alleges. It alleges that Laney unlawfully used a patented product (ART) and then advertised the product on its website. Because, without more, taking and then advertising another's product is different from taking another's "advertising idea," the Underlying Complaint does not allege that Laney used ART's "advertising idea."

---

[2] Nothing in the Policy definition of advertisement indicates a departure from this general rule.

[3] There are, of course, limits to this general rule. Namely, when the product itself is an "advertising idea," or used as an "advertising idea," then use of the product may also be use of an advertising idea. *See Mid-Continent Cas. Co. v. Kipp Flores Architects, L.L.C.*, 602 F. App'x 985, 994 n.20 (5th Cir. 2015) (unpublished) (distinguishing *Ekco* on its facts because the evidence demonstrated that a builder's use of the product itself (homes) was the "primary—indeed, nearly only—means of marketing its services").

No. 16-11183

B

Laney next argues that the Underlying Complaint states a trade dress claim. Trade dress "refers to the total image and overall appearance of a product and may include features such as the size, shape, color, color combinations, textures, graphics, and even sales techniques that characterize a particular product." *Test Masters*, 791 F.3d at 565 (quoting *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 251 (5th Cir. 2010)). Laney claims that the Underlying Complaint potentially states a trade dress claim because, according to Laney, it alleges that Laney mimicked the ART Companies' "style of doing business" on Laney's website. We disagree.

First, many of the allegations simply state that Laney used the ART Companies' product. These allegations do not allege a trade dress claim because "[t]rade dress protection . . . is not intended to create patent-like rights in innovative aspects of product design." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). For this reason, "trade dress protection extends only to incidental, arbitrary or ornamental product features which identify the source of the product." *Id.* Put another way, trade dress protects the distinctive look of the product, not the functional product itself. *Id.* ("[F]unctional product features do not qualify for trade dress protection."). Accordingly, Texas courts have held that allegations that a whole product was copied, without more, do not state a trade dress claim and are not covered by a general commercial liability policy like the one here. *See, e.g.*, *KLN Steel Prods. Co. v. CNA Ins. Cos.*, 278 S.W.3d 429, 442 (Tex. App.—San Antonio 2008, pet. denied).

Second, allegations that Laney misappropriated the ART Companies' trademarks, without more, do not allege a trade dress claim. For example, in *America's Recommended Mailers v. Maryland Casualty Co.*, we considered whether an allegation that a company distributed a mailer that falsely noted

8

an affiliation with the AARP stated a trade dress claim.  339 F. App'x 467, 468–69 (5th Cir. 2009) (unpublished).  We held that it did not because, "[w]hile the AARP . . . alleged that Mailers inappropriately used the AARP's trademark in a deceptive manner, the AARP [did] not challeng[e] the shape, design, color scheme, or any other aesthetic aspect of the cards or the similarity of Mailers's cards to any other advertisements for financial products."  *Id.* at 469.

Third, the Underlying Complaint neither expressly alleges a trade dress claim nor alleges the required elements of trade dress.  For example, the ART Companies do not allege that phrases such as "STT" or "over 500 techniques"—or indeed, any non-trademarked phrases—are distinctive or have acquired secondary meaning.  *See Two Pesos, Inc. v. Taco Cabana, Inc.,* 505 U.S. 763, 768 (1992) (outlining the requirements of protectable dress dress); *see also Lady Primrose's, Inc. v. After Hours Bath Prods., Inc.*, 211 F.3d 125, 2000 WL 309967, at \*2 (5th Cir. 2000) (unpublished) (trade dress must either be inherently distinctive or have acquired secondary meaning).  Likewise, the Underlying Complaint does not "identify" any "discrete elements of the trade dress that it wishes to protect."  *Test Masters*, 791 F.3d at 565.  Absent these allegations the Underlying Complaint does not allege the use of the ART Companies' trade dress.  *See id.* at 566–67.

Fourth, the allegations concerning Laney's website, when read in context, do not concern the "look and feel" of "the website itself."  *Id.* at 566.  All the Underlying Complaint alleges about Laney's website is that it used certain words and phrases to describe the product Laney offered and that those words and phrases could have confused customers because they described the ART Companies' product.  Missing from those allegations is any description of the design, layout, motif, or style of either Laney or the ART Companies'

marketing or websites. "[A]bsent some allegation of aesthetic similarity" the Underlying Complaint does not state a trade dress claim. *Id.* at 566.[4]

## C

Last, Laney argues that the Underlying Complaint states a claim for slogan infringement. Laney argues that "ART," "Active Release Techniques," "soft tissue techniques," "more than 500 techniques," and "Active Release Technique protocols" are all slogans. We disagree.

A slogan infringement claim requires an allegation that another entity used a slogan. *See St. Surfing, LLC v. Great Am. E & S Ins. Co.*, 776 F.3d 603, 609 (9th Cir. 2014) ("Street Surfing's purported use of 'Street Surfing' as a slogan in its *own* advertising is irrelevant. The policies' coverage extends only to Street Surfing's infringement of *another's* slogan."). As explained in Part III.A, except for "ART" and "Active Release Techniques," the Underlying Complaint does not allege that the ART Companies ever used any of the alleged slogans.

"ART," "Active Release Techniques," and "Active Release Technique protocols" are not slogans. They are brand and product names (or brand and product names used as an adjective). Absent specific factual allegations to the contrary, a housemark, brand name, or product name is not a slogan. *See, e.g.*, *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 619 (2d Cir. 2001)

---

[4] Both cases Laney cites are distinguishable because they each involved significant allegations of aesthetic similarity. *See, e.g.*, *Gemmy Indus. Corp. v. Alliance Gen. Ins. Co.*, 190 F. Supp. 2d 915, 919 (N.D. Tex. 1998), *aff'd* 200 F.3d 816, 1999 WL 1095935 (5th Cir. 1999) (unpublished) ("Fun–Damental specifically alleged numerous ways in which the design and appearance of plaintiff's product mimicked its own and caused customer confusion. It is clear that plaintiff was sued for using this trade dress to 'call public attention' to its product."); *Selective Ins. Co. of Se. v. Creation Supply, Inc.*, 2015 IL App (1st) 140152-U, 2015 WL 522247, at *7 (Ill App. Ct. Feb. 9, 2015) ("The placards are more than the mere display of the product itself and affirmatively serve to attract customers. The shape and design of the marker is prominently displayed in the placard, which is the source of the underlying trade dress claim.").

(noting that "a 'trademarked slogan' is a word or phrase used to promote house or product names, but is not the house or product name itself standing alone"); *ShoLodge, Inc. v. Travelers Indem. Co. of Ill.*, 168 F.3d 256, 259 (6th Cir. 1999) ("Nor does [trademark infringement] fall within the ordinary meaning of the phrase 'infringement of slogan,' because a trademark or service mark is not a 'slogan.'"); *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 773 F. Supp. 2d 799, 815–16 (W.D. Mo. 2011), *aff'd*, 686 F.3d 539 (8th Cir. 2012) ("Renaming the trademark infringement and unfair competition claims pled in the *Flowers* litigation 'slogan infringement' in an effort to afford policy coverage would render the policy exclusion for claims of trademark infringement meaningless. Under IBC's theory, any claim involving the alleged misuse of a trademarked name would be covered by the policy as a potential cause of action for slogan infringement.").

In any event, the phrases do not fit within the definition of slogan. Although the Policy does not define "slogan," both parties argue that a slogan is a "distinctive cry, phrase, or motto of any party, group, manufacturer, or person; catchword or catch phrase." *Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*, 329 F.3d 546, 556 (6th Cir. 2003) (quoting Random House Unabridged Dictionary 1800 (2d ed. 1993)). The Underlying Complaint does not allege that the ART Companies used the alleged slogans as catchy, stand-alone phrases. Indeed, where the Underlying Complaint ascribes statements using the challenged phrases to the ART Companies, the statements describe what ART is. These narrative descriptions of what ART is differ markedly from the short, catchy phrases that other courts have found to be slogans. *See Selective Ins. Co. of Am. v. Smart Candle, LLC*, 781 F.3d 983, 986 (8th Cir. 2015) ("The words 'Smart Candle,' [are not] 'attention-getting.' The words simply are the trademarked name of the company, used for product recognition."); *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 546 (8th Cir. 2012) ("IBC

fails to identify anything . . . indicating that Flowers claims to use or actually uses 'Nature's Own' as 'a brief attention-getting phrase used in advertising or promotion,' rather than as a simple product identifier."); *see also Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268 (9th Cir. 2010) (concluding that "Steel Curtain" is a slogan); *Zen Design*, 329 F.3d at 556–57 (concluding that "The Wearable Light" is a slogan).  Accordingly, we hold that the Underlying Complaint does not state a slogan infringement claim.

## IV

We have considered Laney's remaining arguments, and they are without merit.  We affirm.