# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 12, 2024

Lyle W. Cayce
Clerk

————————

No. 23-20026

————————

Gemini Insurance Company,

*Plaintiff—Appellant*,

*versus*

Indemnity Insurance Company of North America,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:20-CV-3889

———————————————————————

Before Richman, *Chief Judge*, and Haynes and Duncan, *Circuit Judges*.

Per Curiam:[*]

This is an insurance coverage dispute that arose out of the tragic death of an employee on a construction site. For the reasons set forth below, we REVERSE the district court's grant of Indemnity Insurance Company of North America's motion for summary judgment, and REMAND to the district court with instructions to: (1) grant Gemini Insurance Company's

———————————

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-20026

motion for summary judgment on Indemnity's duties to defend and indemnify under the Policy, and (2) consider the subrogation issues in the first instance.

## I.     Background

### A. Facts

#### 1.     *Owner Controlled Insurance Program*

ExxonMobil Corporation ("Exxon Mobil") retained Bechtel Oil, Gas, and Chemicals, Inc. ("Bechtel") as a general contractor to build a new hydrocarbon processing facility in Beaumont, Texas (the "Project"). As part of its contract with Bechtel, Exxon Mobil implemented an Owner Controlled Insurance Program ("OCIP"), which provided workers' compensation and employers' liability coverage to Bechtel and all of its subcontractors. Bechtel, in turn, retained Echo Maintenance, L.L.C. ("Echo") as a subcontractor to perform mechanical, structural, and piping work on the Project. Bechtel and Echo subsequently entered into a contract that incorporated the OCIP and required Echo to enroll in the program (the "Subcontract"). Both Bechtel and Echo were enrolled in the OCIP.

#### 2.     *Indemnity's Workers' Compensation and Employers' Liability Policies Issued Under The OCIP*

Under the OCIP, Indemnity Insurance Company of North America ("Indemnity") issued a workers' compensation and employers' liability insurance policy to Bechtel ("OCIP Policy"). Separately, Gemini Insurance Company ("Gemini") issued a general commercial liability policy to Echo under which Bechtel was an additional insured.

Two portions of the OCIP Policy are at issue in this case: (1) Part Two – Employers' Liability Insurance ("Part Two"); and (2) the Voluntary Compensation and Employers' Liability Coverage Endorsement ("VCEL Endorsement").

No. 23-20026

Part Two sets forth the type of covered claim that Indemnity agrees to defend and indemnify Bechtel for. Specifically, it provides that "employers liability insurance applies to bodily injury by accident," which includes death, so long as "[t]he bodily injury . . . arise[s] out of and in the course of the injured employee's employment by you" and the "employment [is] necessary or incidental to your work in a state . . . listed in Item 3.A of the Information Page." "[Y]ou" is defined in this policy under the "General Section" to mean the "employer named in Item 1 of the Information Page," which is Bechtel. Item 3.A of the Information Page lists Texas.

The VCEL Endorsement contains three relevant provisions. The first provision explains that the endorsement "adds Voluntary Compensation Insurance to the policy," and that this insurance applies to bodily injury by accident so long as it is "sustained by an employee included in the group of employees described in the Schedule" and "arise[s] out of and in the course of employment necessary or incidental to work in a state listed in the Schedule." The second provision, as the name of the endorsement suggests, explains how Part Two-Employers' Liability Insurance is impacted:

### F. Employers['] Liability Insurance

Part Two (Employers['] Liabi[lity] Insurance) applies to bodily injury covered by this endorsement as though the State of Employment shown in the Schedule were shown in Item 3.A of the Information Page.

This endorsement changes the policy to which it is attached and is effective on the date issued unless otherwise stated.

The last provision is the aforementioned "Schedule," which defines "Employee" as "employees of a contractor with whom the named insured has executed a written contract to provide workers compensation insurance in connection with the designated premises." It further defines "State of

Employment" in relevant part as "Texas but only at the site indicated in the designated premises endorsement."

### 3.    *Underlying Incident and Lawsuit*

In December 2017, Ms. Espinoza was working as a pipefitter helper on the Project when she was struck by a piece of pipe and sustained fatal injuries. Zachery Leatherwood, individually and on behalf of Ms. Espinoza's two minor children, filed wrongful death and survival claims against Bechtel and Echo in Texas state court alleging negligence and gross negligence. Ms. Espinoza's parents later joined the lawsuit as intervenors (collectively "Underlying Litigation"). In response, Bechtel sought coverage as an additional insured on the commercial general liability policy issued by Gemini to Echo and received a defense from Gemini under a reservation of rights.

Bechtel moved for summary judgment against the Intervenors on the ground that because Exxon Mobil's OCIP provided blanket workers' compensation insurance and coverage to Bechtel and Echo, Intervenors' sole remedy in accordance with Texas Labor Code § 408.001 was workers' compensation benefits. The state court granted Bechtel's motion for summary judgment dismissing the Intervenors' claims.

In September 2020, Bechtel requested Indemnity assume Bechtel's defense in the Underlying Litigation in accordance with the policy it had previously issued. Indemnity denied Bechtel's request on the ground that its policy required an actual employment relationship between the injured employee and Bechtel and there were no allegations to that effect in the Underlying Litigation.

The Leatherwood plaintiffs then settled their claims against Bechtel and Echo. Gemini funded the settlement on behalf of Bechtel while Indemnity partially funded the settlement on behalf of Echo.

### B.  Procedural History

Gemini filed suit against Indemnity seeking a declaratory judgment that Indemnity had a duty to defend and indemnify Bechtel in the Underlying Litigation based on the policy it issued to Bechtel and also asserted breach of contract, subrogation, and reimbursement claims for the costs it expended defending Bechtel and settling the Underlying Litigation.

The parties filed cross-motions for summary judgment.  The main dispute was whether Ms. Espinoza qualified as an "employee" of Bechtel within the meaning of the OCIP Policy such that Indemnity had a duty to defend and indemnify Bechtel in the Underlying Litigation.  Gemini raised two primary theories to support its argument that Ms. Espinoza was an "employee": (1) VCEL Endorsement expanded the scope of Part Two so that employees of a Bechtel subcontractor constituted Bechtel "employees," and, alternatively, (2) Bechtel was Ms. Espinoza's "statutory employer" under § 408.001(a) thereby satisfying the actual employment relationship under Part Two.[1]  According to Gemini, because Ms. Espinoza was an "employee" of Bechtel, it was entitled to reimbursement through contractual or equitable subrogation.

The district court denied Gemini's motion but granted Indemnity's motion and thereafter entered final judgment in favor of Indemnity.  Gemini timely appealed.

## II.  Jurisdiction & Standard of Review

The district court had jurisdiction under 28 U.S.C. § 1332.  We have appellate jurisdiction under 28 U.S.C. § 1291 and § 636(c)(3) because the

---

[1] Gemini raised another argument in the alterative—if the OCIP Policy is ambiguous, any ambiguities should be resolved in its favor.  Given our ruling below, we do not address this issue.

parties consented to have a magistrate judge conduct all further proceeding in their case, and the magistrate judge entered a final judgment granting summary judgment. *See also* FED. R. CIV. P. 73(c) ("In accordance with 28 U.S.C. § 636(c)(3), an appeal from a judgment entered at a magistrate judge's direction may be taken to the court of appeals as would any other appeal from a district-court judgment.").

We review the "district court's grant of summary judgment" de novo, applying the same standard as the district court. *Brand Servs., L.L.C. v. Irex Corp.*, 909 F.3d 151, 155–56 (5th Cir. 2018) (quotation omitted). "Summary judgment is proper only when it appears that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Id.* at 156 (citing FED. R. CIV. P. 56(c)). We view the facts in the light most favorable to the non-movant and draw all inferences in its favor. *Id.*

Further, the interpretation of an insurance contract is a question of law reviewed de novo. *Canutillo Indep. Sch. Dist. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 99 F.3d 695, 700 (5th Cir. 1996). Because this is a diversity case, we are "bound to apply [Texas] law as interpreted by the state's highest court." *Barfield v. Madison County.*, 212 F.3d 269, 271–72 (5th Cir. 2000); *see also Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.*, 620 F.3d 558, 564 (5th Cir. 2010).

## III.    Discussion

Gemini raises four issues on appeal: (1) whether the VCEL Endorsement expanded the scope of Part Two-Employers Liability Insurance such that Ms. Espinoza was considered an "employee" of Bechtel; (2) whether Indemnity was obligated to defend Bechtel in the Underlying Litigation; (3) whether Indemnity was obligated to indemnify Bechtel in the Underlying Litigation; and (4) whether Gemini was contractually or

equitably subrogated to Bechtel's rights. Because Indemnity's duties to defend and indemnify Bechtel, and therefore Gemini's right to reimbursement, turn on the scope of the policy, we start there.

## A. The Scope of the Workers' Compensation and Employers' Liability Insurance Policy

The main issue here is whether Ms. Espinoza was an "employee" of Bechtel within the terms of the OCIP policy. One of Gemini's theories is correct: that the VCEL Endorsement expanded the scope of Part Two of the OCIP Policy so that employees of subcontractors are considered Bechtel employees. Thus, we need not address any other theories.

### 1. *The VCEL Endorsement*

Under Texas law, we must apply the ordinary rules of contract interpretation to insurance policies. *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008). Given that rule, a policy's "words and phrases" are "given their plain and ordinary meaning." *Aggreko, LLC v. Chartis Specialty Ins. Co.*, 942 F.3d 682, 688 (5th Cir. 2019). "An interpretation that gives each word meaning is preferable to one that renders one surplusage." *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 23–24 (Tex. 2015). "No one phrase, sentence or section of a contract should be isolated from its setting and considered apart from the other provisions." *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (alteration adopted) (quotation omitted). Instead, courts must interpret the policy "as a whole." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994). Thus, if a policy includes an endorsement, the endorsement should not "be read apart from the main policy, and the added provisions will supersede the previous policy terms to the extent they are truly in conflict." *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 558 (5th Cir. 2004) (quotation omitted); *see JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460

S.W.3d 597, 605 n.7 (Tex. 2015) (explaining that generally an endorsement alters and expands coverage that would otherwise be excluded by the policy).

Reading the VCEL Endorsement together with Part Two, the only reasonable interpretation is that the VCEL Endorsement expanded the definition of a Bechtel "employee." Part Two provides coverage for "bodily injur[ies] by accident" if "the bodily injury [arose] out of and in the course of the injured employee's employment with [Bechtel]." Outside of the VCEL Endorsement, the OCIP Policy does not define "employee," so we look to the word's ordinary meaning in these circumstances unless context suggests otherwise. *See Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). The ordinary meaning of "employee" is "someone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Maxim Crane Works, L.P. v. Zurich Am. Ins. Co.*, 642 S.W.3d 551, 558 n.6 (Tex. 2022) (alteration adopted) (quotation omitted).

The VCEL Endorsement, by contrast, defines a Bechtel "employee" as "employees of a contractor with whom [Bechtel] has executed a written contract to provide workers compensation insurance in connection with the designated premises." Notably, there is no requirement of direct contractual privity between Bechtel and the individual nor that Bechtel has the right to control the details of the individual's work performance. It also clearly states that it "*changes* the policy to which it is attached." *See RSUI Indem. Co.*, 466 S.W.3d at 121–22 (concluding an endorsement modified a policy when the endorsement stated "This Endorsement Changes The Policy. Please Read It Carefully," and "This endorsement modifies insurance provided under . . . ALL COVERAGE PARTS"); *Primrose Operating Co.*, 382 F.3d at 558–59 (recognizing that an endorsement which provided that it "modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY

COVERAGE FORM" modified that form of the policy). Thus, there appears to be a true conflict between the VCEL Endorsement and Part Two.

The district court and Indemnity both attempt to reconcile this conflict by relying on the "borrowed employee" doctrine. They contend that the VCEL Endorsement can be harmonized with Part Two if the VCEL Endorsement is interpreted as providing Bechtel with the option of offering voluntary compensation insurance to "borrowed employee[s]" of subcontractors. Under this doctrine, an employee "who would otherwise be in the general employment of one employer" becomes an employee of another employer if this "other employer . . . ha[s] the right to direct and control the details of the" employee's work. *St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 537 (Tex. 2002) (quotation omitted). According to the district court and Indemnity, under this interpretation there could be circumstances where an individual is both an "employee" under the VCEL Endorsement and also under Part Two—for example, an employee is directly employed by a subcontractor of Bechtel but is actually employed by Bechtel because it has the right to direct and control the details of that employee's work. The are multiple problems with this interpretation.

First, this proposed interpretation assumes that the definition of "employee" under Part Two is limited to whether the employer had the right to control that employee's work. But this definition is inconsistent with the ordinary, plain meaning of "employee," which is the meaning we adopted for Part Two. As noted above, the ordinary meaning of "employee" is "someone who works in the service of another person (the employer) under an express or implied contract of hire, under which the employer has the right to control the details of work performance." *Maxim Crane Works, L.P.*, 642 S.W.3d at 558 n.6 (alteration adopted) (quotation omitted). So, there are actually two requirements for an individual to constitute an "employee" under Part Two: (1) someone who works in the service of another person

under an express or implied contract for hire; and (2) under which the employer has the right to control the details of work performance. Just because Bechtel would have the right to control the work of another contractor's employee does not mean there is an implied contract for hire, especially when the employee is on the payroll of the other contractor. *See Reliance Nat'l Indem. Co. v. Advance'd Temporaries, Inc.*, 227 S.W.3d 46, 49 (Tex. 2007) (concluding that even though the employer did not control the details of the work at the construction site, it did not cease being the employees' employer and the borrowed-employee tort doctrine did not suggest otherwise because the case "is one of contract").[2] In short, under the circumstances hypothesized by the district court, that individual would not satisfy the definition of "employee" under Part Two.

Likewise, this interpretation does not comport with Paragraph F of the VCEL Endorsement. Paragraph F provides "Part Two (Employers Liabi[lity] Insurance) *applies to bodily injury covered by this endorsement* as though the State of Employment shown in the Schedule were shown in Item 3.A. of the Information Page." Paragraph A of the VCEL Endorsement explains what is meant by "bodily injury covered by this endorsement." It provides in pertinent part that bodily injury must "be sustained by an employee included in the group of employees described in the Schedule." If Indemnity only intended the VCEL Endorsement to apply to "borrowed employees," there are far easier ways to explain this limitation than the circuitous interpretation proposed above.

---

[2] Alternatively, to the extent an implied contract for hire logically follows from the right to direct and control the work of another contractor's employee, then, in such circumstances, Bechtel would be that employee's direct employer. This would effectively render Paragraph F of the VCEL Endorsement meaningless.

No. 23-20026

Indemnity's other arguments to the contrary are unavailing.[3]  It first contends that the VCEL Endorsement adds only voluntary compensation insurance to the policy and does not modify Part Two – *Employers' Liability Insurance*.  Both the title of the Endorsement—Voluntary Compensation *and Employers Liability Coverage* Endorsement—and Paragraph F refute this argument.  *See Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 793 (Tex. 2005) (declining to construe a provision as limited to one topic when "the title of the paragraph show[ed] that two different topics were addressed in it").

It next contends that Paragraph F only partially modifies Part Two because the phrase "as though" in Paragraph F demonstrates it only intended to add states to Item 3.A of the Information Page.  But this argument cannot bear its weight because it ignores the beginning of Paragraph F— "Part Two (Employers['] Liabi[l]ity Insurance) *applies to bodily injury covered by this endorsement*"—and the sentence immediately following Paragraph F—"[t]his endorsement changes the policy to which it is attached."

In sum, we conclude that the VCEL Endorsement expanded the OCIP Policy's definition of "employee" to include employees of Bechtel's

---

[3] Indemnity also argues that Gemini forfeited certain contractual interpretation arguments on appeal because they were not raised below.  We disagree with Indemnity's characterization of Gemini's arguments.  Gemini is not raising new arguments but rather urging that the grounds relied on by the district court in denying its motion for summary judgment were wrong.  *Cf. Kaswatuka v. U.S. Dep't of Homeland Sec.*, 7 F.4th 327, 329 (5th Cir. 2021) ("As [appellant] did not respond to the motion to dismiss, [appellant's] appellate arguments are limited to urging that the grounds given by the district court for dismissing her complaint are wrong." (quotation omitted)); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("When an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law.").

subcontractors, such as Ms. Espinoza.

## B.  The Duties to Defend and Indemnify

With the scope of the OCIP Policy defined, we now consider whether Indemnity had a duty to defend and/or indemnify Bechtel for the Underlying Litigation.[4]

### 1.    *Duty to Defend*

Gemini contends Indemnity had a duty to defend Bechtel in the Underlying Litigation because the Leatherwood Plaintiffs' and Intervenors' petitions contained sufficient allegations to potentially support a covered claim for an "employee" within the meaning of the VCEL Endorsement.[5] Gemini's contention has merit.

Texas law uses the "eight-corners" or "complaint-allegation" rule to determine whether a liability insurer has a duty to defend an insured against a third-party lawsuit. *Laney Chiropractic & Sports Therapy, P.A. v. Nationwide Mut. Ins. Co.*, 866 F.3d 254, 259 (5th Cir. 2017); *Zurich Am. Ins. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  Under that rule, courts look to the facts alleged within the four corners of the petition (or complaint) in the underlying lawsuit, "measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy." *Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 33 (Tex. 2014).  If there is a

---

[4] These two parts of an insurance policy are separate and have separate standards and requirements.  There are cases where one or the other, but not both, apply, as well as cases where both do apply.  *See Gilbane Bldg. Co. v. Admiral Ins.*, 664 F.3d 589, 601 (5th Cir. 2011).

[5] Alternatively, Gemini contends that if the pleadings in the Underlying Litigation are not enough, by themselves, to establish a potentially covered claim, then extrinsic evidence, like the Subcontract, in conjunction with the pleadings, is enough.  We need not reach this issue, however, because the operative pleadings, by themselves, are sufficient.

"doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Nat'l Union Fire Ins. Co. of Pittsburgh, v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam) (quotation omitted).

The underlying pleadings allege that: (1) Ms. Espinoza was an employee of Echo; (2) Echo and Bechtel were involved in a construction project for Exxon Mobil at the designated premises; (3) Ms. Espinoza was "doing work for" Bechtel at the designated premises; and (4) Bechtel exercised and/or retained control over the operations, activities, and construction at the designated premises at the time of Ms. Espinoza's death.

Taken together, these allegations are sufficient to "potentially support a covered claim" under the OCIP Policy as modified by the VCEL Endorsement. *See Zurich Am. Ins. Co.*, 268 S.W.3d at 490. The allegations easily establish that Ms. Espinoza was an employee of Echo, but also simultaneously working for Bechtel at the designated premises, thus satisfying the VCEL Endorsement. They further establish that Ms. Espinoza was tragically killed while working in the scope of her employment, thereby satisfying Part Two. As such, the allegations, construed liberally, constitute a claim potentially within the OCIP policy.[6] In sum, we conclude that Indemnity had a duty to defend Bechtel in the Underlying Litigation.

_____

[6] Of course, the pleadings in the underlying case are not necessarily trying to address insurance. After all, they are seeking to recover from the defendants under tort law, not suing an insurance company. So, anything that merely raises doubts about coverage is not enough for us to conclude that Indemnity does not have a duty to defend. *See Nat'l Union Fire Ins. Co. of Pittsburgh*, 939 S.W.2d at 141.

### *2.  Duty to Indemnify*

"The duty to indemnify is separate and distinct from the duty to defend."  *Gilbane Bldg. Co.*, 664 F.3d at 601.  "The duty to defend is circumscribed by the eight-corners doctrine; the duty to indemnify, on the other hand, is controlled by the facts proven in the underlying suit."  *Id.* Accordingly, we can consider facts outside of those alleged in the petition in determining the duty to indemnify. *Burlington N. & Santa Fe Ry. Co. v. Nat'l Union Fire Ins. Co.*, 334 S.W.3d 217, 219 (Tex. 2011) (per curiam).

Here, there is no dispute that Ms. Espinoza was an Echo employee, that Echo was a subcontractor of Bechtel, that Bechtel and Echo had a written contract, and that the work they performed was on a "designated premises" within the meaning of the OCIP Policy.  The only dispute between the parties is whether the Subcontract between Bechtel and Echo established that Bechtel "provided" workers' compensation to Echo.  Gemini relies on *HCBeck, Ltd. v. Rice*, 284 S.W.3d 349 (Tex. 2009) to support its contention that it "provided" workers' compensation insurance.  However, that case was interpreting the word "provide" under the Texas Workers' Compensation Act, not an insurance policy. *See id.* at 350.  So, its holding is not binding.  Nevertheless, the rationale employed by the Texas Supreme Court is persuasive, and we adopt it since it accords with the plain meaning of the word "provide."

In explaining that a general contractor "provides" workers' compensation insurance to a subcontractor within the meaning of the Texas Workers' Compensation Act even though it is through an OCIP, the Texas Supreme Court explained "[h]ad the Legislature intended for 'provide' to mean 'purchase,' it could simply have used the word 'purchase' instead." *Id.* at 358 (quotation omitted).  Thus, "provide" is obviously broader than "purchase," which accords with the plain meaning of "provide"—"to supply or *to make available*."  *See Provide*, MERRIAM-WEBSTER'S

DICTIONARY, https://www.merriam-webster.com/dictionary/provide (last visited Dec. 13, 2023). Here, Bechtel's subcontract with Echo incorporated the OCIP and required Echo to enroll in the program. As such, Bechtel "provided" workers' compensation insurance to Echo when they executed the Subcontractor. Accordingly, Indemnity has a duty to indemnify Bechtel as well.

### C. Contractual and Equitable Subrogation

Gemini contends that it is entitled to reimbursement from Indemnity because Gemini is contractually or, alternatively, equitably subrogated to Bechtel's rights. While Indemnity disputes the merits of Gemini's arguments, it contends the subrogation issues should be remanded to the district court to decide in the first instance. We agree.

Because the district court concluded that Indemnity did not have a duty to defend or indemnify Gemini, it never addressed the substance of Gemini's subrogation arguments. "It is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Humphries v. Elliott Co.*, 760 F.3d 414, 418 (5th Cir. 2014) (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976)). Therefore, we remand to the district court to consider whether Gemini is contractually or equitably subrogated to Bechtel's rights such that it is entitled to reimbursement from Indemnity.

### IV. Conclusion

For the reasons set forth above, we REVERSE the district court's grant of Indemnity's motion for summary judgment, and REMAND to the district court with instructions to: (1) grant Gemini's motion for summary judgment on Indemnity's duties to defend and indemnify under the Policy, and (2) consider the subrogation issues in the first instance.